**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

| | |
|---|---|
| SHERRY ISENBERG, | : Docket No. 15-cv-5425 |
| | : |
| Plaintiff, | : |
| | : **COMPLAINT** |
| v. | : |
| | : |
| METROPOLITAN LIFE INSURANCE | : |
| COMPANY, | : |
| | : |
| Defendant. | : |

-----------------------------------------------------------------x

Plaintiff, Sherry Isenberg ("Mrs. Isenberg"), by and through her attorneys Hoguet Newman Regal & Kenney, LLP, for her complaint against Metropolitan Life Insurance Company ("MetLife"), alleges as follows:

## INTRODUCTION

1.     This is a civil action brought under § 502 of the Employee Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, for breach of the terms of an employee benefit plan and breach of fiduciary duty, for the purpose of compelling MetLife to provide certain disability insurance benefits in the amounts and at the coverage levels promised, interest, and for an accounting, disgorgement of profits and other equitable relief, and attorneys' fees and costs incurred as a result of MetLife's failure to pay benefits owed to Mrs. Isenberg.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(1).

3.     Venue is proper in the Southern District of New York pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(1).

## PARTIES

4.     Plaintiff Sherry Isenberg is a citizen of the United States and resides in Sussex County, New Jersey.

5.     Defendant Metropolitan Life Insurance Company ("MetLife") is and at all relevant times has been doing business in this judicial district.

6.     MetLife is an administrator and fiduciary of the Lombard Risk System, Inc. Long-Term Disability Plan (the "Plan") within the meaning of ERISA § 3(16) and § 3(21), 29 U.S.C. §§ 1002(16) and 1002(21), and makes benefits determinations under the Policy.

7.     Mrs. Isenberg was at all relevant times an employee of the Lombard Risk System, Inc., (the "Lombard"), and a "participant" of the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7).

## FACTUAL ALLEGATIONS

### A.     The Plan and the Policy

8.     The Plan is an employer-provided employee benefit plan as defined by ERISA § 3(1)(A), 29 U.S.C. § 1002(1)(A).

9.     The Plan provides income benefits for wages lost due to a disabling condition.

10.     The Plan is funded pursuant to an insurance policy (the "Policy").

11.     Upon information and belief, the Plan does not confer discretion on Metlife either with regard to its determination of claims or its interpretation of Plan terms.

12.     At its most basic level, the Plan provides that Metlife will pay "Monthly Benefits" to those individuals that suffer a "Disability."

13.      "Disability" is defined by the Plan as meaning:

due to a Sickness or as a direct result of accidental injury:

- You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and

- You are unable to earn:
    - during the Elimination Period and the next 24 months of Sickness or accidental injury, more than 80% of your Predisability Earnings at Your Own Occupation for any employers in Your Local Economy; and
    - after such period, more than 60% of Your Predisability Earnings from any employers in Your Local Economy at any gainful occupation for which You are reasonably qualified taking into account Your training, education, and experience.

14.     "Monthly Benefit" is defined by the Plan as meaning "60% of the first $16,666 of Your Predisability Earnings."

15.     Mrs. Isenberg's monthly "Predisability Earnings" qualified her for a monthly disability benefit in excess $7,000.00 under the terms of the Plan.

16.     The Plan provides that disability benefits are payable until age 65 for any disability that begins before age 60.

17.     As of March 2012, Mrs. Isenberg was 46 years old.

    **B.**     **Mrs. Isenberg's Disability**

18.     At all relevant times, Mrs. Isenberg was employed by Lombard.  As of January 2012, Lombard employed Mrs. Isenberg as a Managing Director in charge of running the New York Office of Lombard with management responsibility for other members of the staff.  In addition, Mrs. Isenberg arranged an office move and was responsible for human resource duties relating to Lombard's staff throughout the United States.

19.     As part of her job function at Lombard, Mrs. Isenberg also sold software solutions, which required Mrs. Isenberg to spend time traveling to clients throughout United States and internationally.

20.     In or around January 2012, Mrs. Isenberg was diagnosed with an Avascular Malformation ("AVM") and planned on undergoing a series of embolizations to treat the AVM.

21.     In January 2012, Mrs. Isenberg underwent two embolizations, the second of which resulted in complications. Specifically, the AVM ruptured and caused stroke-like deficits.

22.     In March 2012, Mrs. Isenberg left her employment with Lombard, due to the debilitating conditions she suffered as a result of the AVM rupture.

23.     Among others things, Mrs. Isenberg's disabilities included: (a) difficulty walking; (b) visual field defects and visual neglect; and (c) seizures. These conditions, among others, left Mrs. Isenberg unable to drive a car and limited her ability to work.

24.     Upon information and belief, Metlife determined that Mrs. Isenberg was disabled, under the terms of the Plan.

25.     In August 2012, after Mrs. Isenberg completed the required 180-day "Elimination Period," Metlife began paying Mrs. Isenberg long-term disability ("LTD") benefits under the Plan.

26.     Metlife paid Mrs. Isenberg LTD benefits under the Plan continuously from August 6, 2012 through July 5, 2014.

**C.     Metlife's Takes Away Mrs. Isenberg's Disability Benefits**

27.     By letter dated July 14, 2014, Metlife advised Mrs. Isenberg that she allegedly no longer satisfied the definition of Disability under the Plan because, Metlife claimed, Mrs. Isenberg's current restrictions and limitations did not prevent her return to work in her occupation.

28.     Specifically, Metlife stated that although Ms. Isenberg's doctors restricted her driving due to seizures, according to a "Vocational Rehabilitation Consultant" hired by Metlife, Metlife determined that Mrs. Isenberg could drive an automobile under New Jersey regulations and therefore she no longer met the definition of disability.

4

29.     On July 29, 2014, pursuant to the Plan, Mrs. Isenberg administratively appealed Metlife's determination.

30.     In August 2014, Mrs. Isenberg, and her doctors, provided Metlife with information concerning Mrs. Isenberg's condition.

31.     Metlife retained an "Independent Physician Consultant" ("IPC") who was board-certified in neuro-ophthalmology to review the information in Mrs. Isenberg's file and provide an opinion of functionality based upon the clinical evidence available.

32.     After reviewing the medical information in Mrs. Isenberg's file and talking with Mrs. Isenberg's medical team, the IPC opined that Mrs. Isenberg's functional limitations were supported due to a left homonymous visual field defect.  The IPC further opined that Mrs. Isenberg was unable to drive due to this visual field defect, even if cleared by her own neurologist after being seizure free for one year.  The IPC also opined that Mrs. Isenberg's visual field defect could interfere with Mrs. Isenberg's ability to perform vision-dependent activities, such as reading and writing.

33.     Metlife requested that the IPC clarify its opinion, in light of the fact that Metlife alleged that Mrs. Isenberg had successfully returned to work from February 2013 through November 2013.  The IPC stated that it was possible for Mrs. Isenberg to return to work if she had learned how to successfully adapt to the visual field deficit.

34.     Metlife also retained a Vocational Rehabilitation Consultant ("VRC") to review Mrs. Isenberg's restrictions and limitations identified by the IPC, as well as to review Mrs. Isenberg's education, training, and work experience.  The VRC opined that the restrictions and limitations found by the IPC could be alleviated by reasonable accommodations, such as by the use of car services, taxis, or public transportation.  The VRC also noted that Mrs. Isenberg demonstrated an ability to adapt to her vision disability by working at a different, but similar, management position from February 2013 through November 2013.

35.     As a result, Metlife determined that the clinical evidence was insufficient to support Mrs. Isenberg's inability to return to performing her regular occupation.

36.     By letter dated September 24, 2014, Metlife denied Mrs. Isenberg's appeal.  In the letter dated September 24, 2014, Metlife advised Mrs. Isenberg that she had "exhausted the administrative remedies under the Plan, and no further appeal will be considered."

37.     At all relevant times, Mrs. Isenberg has remained disabled under the terms of the Plan.

## COUNT I – ACTION UNDER ERISA § 502(a)(1)(B)
## TO RECOVER BENEFITS DUE

38.     Mrs. Isenberg incorporates by reference Paragraphs 1 through 37 as though fully set forth herein.

39.     For the reasons discussed above, MetLife's decision to terminate Mrs. Isenberg's disability benefits, as well as Metlife's decision to uphold that termination, were erroneous, against the weight of the evidence, in violation of the terms of the Plan, and arbitrary and capricious.

40.     As a result of Metlife's improper termination of benefits and failure to reinstate those benefits upon Mrs. Isenberg's request for review, Metlife owes Mrs. Isenberg disability benefits of $7,230.00 per month from July 2014 to the present plus interest.

## COUNT II – ACTION UNDER ERISA § 502(a)(3)
## TO REMEDY BREACH OF FIDUCIARY DUTY

41.     Mrs. Isenberg incorporates by reference Paragraphs 1 through 40 as though fully set forth herein.

42.     Pursuant to ERISA § 404(a), 29 U.S.C § 1104, as a fiduciary with respect to the Plan, MetLife shall discharge its duties solely in the interest of Plan participants and beneficiaries, and:

(a)     For the exclusive purpose of providing benefits to Plan participants and beneficiaries and defraying reasonable expenses of administering the Plan;

(b)     With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(c)     In accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with the provisions of Titles I and IV of ERISA.

43.     MetLife's actions in denying Mrs. Isenberg's benefits are a violation of each and every one of its fiduciary duties as set forth above.

**WHEREFORE**, Mrs. Isenberg prays for the following relief from the Court:

A.     A declaratory judgment under ERISA § 502, 29 U.S.C. § 1132 that Mrs. Isenberg is entitled to the disability benefits in the amount set forth in the Plan at the time benefits became payable and that MetLife violated the Plan and its fiduciary duties by failing to pay these benefits; and

B.      An order compelling MetLife to pay Mrs. Isenberg's benefits per month from July 2014 up to the date of judgment, plus prejudgment interest at a rate of 9% per annum on all benefits that have accrued prior to the date of judgment in accordance with New York State law, or controlling provisions of federal law or the Plan; and

C.     An order compelling an equitable accounting of MetLife's profits on withheld benefits and disgorgement of any profits or gain MetLife has obtained as a result of the wrongs alleged in the Complaint and equitable distribution of any profits or gains to Mrs. Isenberg; and

D.     That the Court award Mrs. Isenberg any statutory or other penalties, assessments, or other monetary or equitable relief the Court deems just and proper, including attorney's fees, related to MetLife's inadequate claims procedures and benefits determination under ERISA §503, 29 U.S.C.

§ 1133, Department of Labor regulations, including 29 C.F.R. § 2560.503-1, and provisions of the

Patient Protection and Affordable Care Act;

      E.      An award of Mrs. Isenberg's attorney's fees pursuant to ERISA § 502(g), 29 U.S.C. §

1132(g), as well as the costs and disbursements of this action; and

      F.      That the Court award Mrs. Isenberg any and all other relief, including equitable

relief, to which she may be entitled and as the Court deems just and proper.

Dated: July 13, 2015
      New York, New York

      Respectfully submitted,

      HOGUET NEWMAN REGAL
        & KENNEY, LLP

      By: _____
          Andrew N. Bourne (AB-9774)
      10 East 40th Street
      New York, New York 10016
      Tel:  (212) 689-8808