

10 East 40th Street
New York, New York 10016

Tel  212.689.8808
Fax  212.689.5101
www.hnrklaw.com

abourne@hnrklaw.com

September 18, 2015

**VIA ECF**

Hon. Gregory H. Woods
United States District Judge
United States District Court for the
   Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Isenberg v. Metropolitan Life Insurance Company*, No. 15-cv-5425 (GHW)

Dear Judge Woods,

      We represent Plaintiff Sherry Isenberg ("Mrs. Isenberg") in the above-captioned matter. We write, along with attorneys for Defendant Metropolitan Life Insurance Company ("MetLife"), pursuant to the Court's Order dated July 22, 2015, to advise the Court of the status of the case.

      **1.**     **Plaintiff's Description of Case and Claims**

      This is a civil action brought under § 502 of the Employee Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. Mrs. Isenberg alleges that MetLife breached of the terms of an employee benefit plan and breached its fiduciary duty to her by failing to provide certain long-term disability insurance benefits.

      As of January 2012, Mrs. Isenberg was employed by Lombard Risk Systems, Inc. ("Lombard") as a managing director in charge of running the New York office of Lombard. In January 2012, Mrs. Isenberg was diagnosed with Avascular Malformation ("AVM"), which required her to undergo a series of embolizations. The second embolization resulted in complications; the AVM ruptured and caused stroke-like deficits. In March 2012, Mrs. Isenberg left her employment with Lombard, due to the debilitating conditions she suffered as a result of the AVM rupture, which included difficulty walking, visual field defects, and seizures. Initially, MetLife determined that Mrs. Isenberg was disabled under the plan and, in August 2012, MetLife began paying Mrs. Isenberg long-term disability ("LTD") benefits under Lombard's LTD plan. In fact, MetLife paid Mrs. Isenberg's LTD benefits from August 2012 to July 2014.

      In July 2014, MetLife advised Mrs. Isenberg that she allegedly no longer satisfied the definition of "Disability" because MetLife claimed that Mrs. Isenberg could return to work in her



occupation. After Mrs. Isenberg appealed MetLife's determination, MetLife retained an "Independent Physician Consultant" (the "IPC") who initially determined – after talking with Mrs. Isenberg's medical team - Mrs. Isenberg was unable to drive due to this visual field defect, even if cleared by her own neurologist after being seizure free for one year. The IPC also opined that Mrs. Isenberg's visual field defect could interfere with Mrs. Isenberg's ability to perform vision-dependent activities, such as reading and writing. Unsatisfied, MetLife requested that the IPC clarify its opinion, in light of the fact that MetLife alleged that Mrs. Isenberg had successfully returned to work (for a family business) from February 2013 through November 2013. The IPC stated that it was possible for Mrs. Isenberg to return to work if she had learned how to successfully adapt to the visual field deficit. MetLife also retained a Vocational Rehabilitation Consultant (the "VRC"), who opined that opined that the restrictions and limitations found by the IPC could be alleviated by reasonable accommodations, such as by the use of car services, taxis, or public transportation.

MetLife tdetermined that allegedly the clinical evidence was insufficient to support Mrs. Isenberg's inability to return to performing her regular occupation. The evidence shows the contrary and that she has remained disabled under the terms of Lombard's LTD plan.

**2. Defendant's Description of the Case and Defenses**

*A. Brief Description of Case*

Sherry Isenberg ("Plaintiff" or "Isenberg") brought this action seeking an award of long term disability ("LTD") benefits under the Lombard Risk System, Inc. ("Lombard") LTD Benefit Plan ("Plan"). Specifically, Isenberg's First Cause of Action alleges a claim for the wrongful denial of benefits under §502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"); 29 U.S.C. §1132(a)(1)(B), claiming that MetLife's denial of her claim for LTD benefits was erroneous, arbitrary and capricious, and that she is entitled to benefits under the Plan. Isenberg's Complaint also asserts a Second Cause of Action under ERISA §502(a)(3) alleging that MetLife breached its fiduciary duties by wrongfully denying her claim for benefits.

Isenberg last worked at Lombard on January 30, 2012, at which time she claimed to be disabled due to symptoms associated with her diagnosis of arteriovenous malformation ("AVM") (a tangle of abnormal blood vessels connecting arteries and veins in the brain). Isenberg was first diagnosed with this condition after she had a seizure on November 2011. MetLife approved Isenberg's claim for short term disability ("STD") benefits based on this condition through exhaustion. MetLife then approved her claim for LTD benefits from August 6, 2012 through July 5, 2014. During its review of Isenberg's continuing claim for LTD benefits, MetLife determined that her condition improved enough to enable her to perform the duties of her "own occupation" as defined by the Plan. This determination was based on the fact that Isenberg returned to work at another position, her vision had improved, and based on the report of a MetLife Vocational Rehabilitation Consultant ("VRC"). It was also noted that Isenberg was legally allowed to drive under New Jersey state law because she was seizure free for a period of six (6) months. MetLife informed Isenberg that her benefits were terminated effective July 5, 2014 because the only thing



preventing her from returning to work was her alleged inability to drive, which is not a relevant consideration for deterring her claimed disability under the Plan.

Isenberg filed an administrative appeal of MetLife's initial adverse benefit determination, in which she argued that she could not drive due to her loss of peripheral vision, and was therefore unable to perform her own occupation. On appeal, MetLife reviewed all of the records in Isenberg's claim file, including all of the additional documentation submitted on appeal and referred her records for review by an independent physician consultant ("IPC"), board certified in Ophthalmology with an expertise in Neuro-Ophthalmology and a file review by another VRC. The IPC confirmed that Isenberg had a loss of peripheral vision in her left eye that prohibited her from driving and added that "[t]he visual field defect could potentially slow down [her] ability to read and write . . . depending on how she has learned to adapt to the [vision] deficit." Because Isenberg had successfully returned to work notwithstanding her visual deficits and did not report any problems other than her ability to drive herself to work, MetLife sought a clarification from the IPC regarding her current functional capacity. In response, the IPC reported that "[i]t is certainly possible for Ms. Isenberg to work if she has learned how to successfully adapt to her visual field deficit." The MetLife VRC reviewed the restrictions/limitations provided by the IPC and opined that Isenberg was able to perform her own occupation with self-accommodations such as a car service/taxi and/or use of public transportation. The VRC also stated that these accommodations are reasonable given Isenberg's position in senior management and that such services are often made available to any employee traveling on company business. The VRC also stated that Isenberg demonstrated the ability to function successfully in a similar senior management position from February 2013 through November 2013 at a different employer and appeared to have adapted to her visual deficit.

Following a review of Isenberg's claim on appeal, MetLife determined that its initial adverse claim decision was proper and thus, upheld that determination on appeal.

B.  *MetLife's Defenses*

1.  *MetLife's Adverse Determination Was Not Arbitrary and Capricious*

MetLife's adverse benefit determination in this matter was based on full and fair review of the Isenberg's claim file, and was therefore not arbitrary and capricious. The Plan contains a full grant of discretionary authority to MetLife authorizing it to make all eligibility and benefit claim determinations under the Plan. Therefore, MetLife's decision to deny the plaintiff's claim for continuing LTD benefits may only be overturned if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Kinstler* v. *First Reliance Standard Life Insurance Co.*, 181 F.3d 243, 249 (2d Cir. 1999). "'Substantial evidence' is 'such evidence that a reasonable mind must accept as adequate to support the conclusion reached by the [decision-maker and] requires more than a scintilla of evidence but less than a preponderance.'" *See Miller v. United Welfare Fund,* 72 F.3d 1066, 1072 (2d Cir. 1995); *see also Kruk v. Metro. Life Ins. Co.,* 567 F. App'x 17 (2d. Cir. 2014); *Fortune* v. *Long Term Group Disability Plan for Employees of Keyspan Corp.*, 637 F. Supp. 2d 132, 141 (E.D.N.Y. 2009) *aff'd*, 391 F. App'x. 74



(2d Cir. 2010). Moreover, where both the claim administrator and claimant "offer rational, though conflicting, interpretations of plan provisions, the [administrator's] interpretation must be allowed to control." *Pulvers* v. *First Unum Life Ins. Co.*, 210 F.3d 89, 92-93 (2d Cir. 2000); *Hobson* v. *Metropolitan Life Ins. Co.*, 574 F.3d 75, 88 (2d Cir. 2009). In addition, MetLife referred Isenberg's medical records for review by an IPC, and also referred her claim file for review by two (2) VRCs prior to issuing its final benefit determination and that IPC and VRC issued reports in which they rendered opinions supporting MetLife's final adverse determination. Accordingly, MetLife's determination was reasonable, based on substantial evidence, and not arbitrary and capricious.

      *2.      Isenberg's Purported Inability to Drive to Work is not a Sufficient Ground to Support her Claim for Continuing Disability Benefits*

Isenberg alleges that MetLife acted in an arbitrary and capricious manner because it denied her claim for continuing LTD benefits despite her assertion that she could not drive to work. Isenberg's contention is entirely without merit because a claimant's ability or inability to commute to a particular job site is not a consideration for determining disability. *See Nelson v. Unum Life Ins. Co. of Am.*, 421 F. Supp. 2d 558, 568 (E.D.N.Y. 2006) aff'd, 232 F. App'x 23 (2d Cir. 2007); *see also Onge v. Unum Life Ins. Co. of Am.*, No. 3:07-CV-01249 (AWT), 2010 WL 3802787, at *4 (D. Conn. Sept. 20, 2010)(holding that claimant's long commute was not a consideration for determining disability); *Adams v. Prudential Ins. Co. of Am.,* 280 F.Supp.2d 731, 739 (N.D. Ohio 2003) (reversing decision to terminate long-term disability benefits on other grounds, but noting that "[t]he Court is unpersuaded by [plaintiff's] argument that his inability to travel to and from work is a material and substantial duty that Defendant must consider."); *Chandler v. Underwriters Labs., Inc.,* 850 F.Supp. 728, 738 (N.D. Ill. 1994) ("It is absurd to suggest that it is arbitrary and capricious for the Appeals Committee to have decided that the fortuity of where an employee lives (something within the employee's control, unlike a truly medical disability) is not relevant to a finding of disability under the plan—a concept that expressly focuses on medically disabling conditions."). Accordingly, Plaintiff's argument that she should be found disabled under the Plan because she could not drive herself to work must be rejected by the Court.

      *3.      Isenberg's Claim for Attorney's Fees is Premature*

Isenberg she is entitled to an award of attorney's fees incurred in the prosecution of this lawsuit under ERISA §502(g)(1), 29 U.S.C. §1132(g)(1). However, in *Hardt v. Reliance*, No. 09-448, 130 S. Ct. 2149 (2010), the U.S. Supreme Court ruled that a litigant must have "achieved 'some degree of success on the merits'" in order to be eligible for a fee award. *Id* at 2158. The Court ruled that if a party satisfies this threshold inquiry, then the district court has discretion to determine the amount of fees to award, if any. *Id.* Here, MetLife will argue that it is possible that either party may achieve "some degree of success on the merits," which would entitle either party to legal fees. Therefore, the question of whether any party is entitled to attorney's fees is premature.



> 4. **Plaintiff's Second Cause of Action For Breach of Fiduciary Duty Under ERISA §502(a)(3) is Improper as a Matter of Law**

Isenberg's Second Cause of Action alleges that MetLife breached its fiduciary duties under ERISA § 404(a), 29 U.S.C. §1104(a) by improperly denying her claim for continuing LTD benefits under the Plan. (Complaint ¶¶ 41-43). The relief sought under this cause of action is duplicative of the relief Isenberg seeks in her First Cause of Action under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) and, as such, fails to properly state a claim upon which relief can be granted. Isenberg's First and Second Causes of Action both request an order awarding her benefits under the Plan. (Complaint ¶¶ 38-43 and pp. 7-8). However, Isenberg's claim for judicial review of MetLife's adverse benefit determination is only redressable under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B). *See Krauss v. Oxford Health Plans, Inc.,* 517 F.3d 614, 630 (2d Cir. 2008). Because Isenberg has already alleged a cause of action challenging MetLife's denial of her benefit claim under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), she cannot also have a cognizable claim under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) seeking the exact same relief. *See Varity Corp.* v. *Howe*, 516 U.S. 487, 509-10 (where plaintiff's interests are protected elsewhere, ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) relief is not "appropriate"). Therefore, Isenberg's Second Cause of Action fails to state a claim upon which relief can be granted and should be dismissed.

**2.     Basis for Subject Matter Jurisdiction**

Plaintiff:  Mrs. Isenberg asserts subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action was brought pursuant to Section 502 of ERISA.

Defendant: Based on the allegations in the Complaint, Defendant agrees with plaintiff's statements regarding jurisdiction. Defendant also agrees that venue in this judicial district is proper pursuant to 28 U.S.C. § 1391 and 29 U.S.C. §  1132(e)(2) because, inter alia, Defendant can be found in this judicial district.

**3.     Brief Description of Motions or Other Applications**

Plaintiff:  Mrs. Isenberg notes that, given MetLife's position concerning the scope of the record below, Mrs. Isenberg may make a motion to supplement the record.

Defendant: MetLife expects to file a motion for summary judgment at the close of discovery based on its argument that its final adverse benefit determination was reasonably based on substantial evidence in the administrative record and not arbitrary and capricious. MetLife also expects to move for summary judgment dismissing Plaintiff's count for relief under ERISA §502(a)(3) because that count is just a repackaged claim for benefits that duplicates Plaintiff's claim under ERISA §502(a)(1)(B).

**4.     Brief Description of Discovery Necessary**

Plaintiff: Mrs. Isenberg does not anticipate needing extensive discovery to resolve this action.  Beyond MetLife's administrative record, Mrs. Isenberg's medical records from her



treating physicians may also be relevant and discoverable in this action. Mrs. Isenberg notes that, contrary to MetLife's position below, this Court possesses the discretion to permit evidence from outside the administrative record. *See, e.g., Locher v. UNUM Life Ins. Co. of Am.,* 389 F.3d 288, 296 (2d Cir. 2004). To the extent necessary, Mrs. Isenberg will demonstrate that "good cause" exists for supplementing the administrative record.

Defendant: It is MetLife's position that when the Court performs its review under the deferential arbitrary and capricious standard of review, it must not consider any evidence outside of the "administrative record," which consists solely of those documents before the claim administrator when it made its final benefit determination. *See Richard v. Fleet Fin. Group Inc. LTD Employee Benefits Plan*, No. 09-2284-cv, 2010 WL 625003,*2 (2d Cir. Feb. 24, 2010); *Hobson*, 573 F.3d at 89; *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003); *Miller* , 72 F.3d at 1071. Therefore, any request by the plaintiff for extra-record discovery, including expert witness discovery, seeking to accrete the administrative record is improper and must be rejected by the Court.

**5.     Statement Regarding Settlement Discussions**

The parties have not engaged in any settlement discussions.

Plaintiff: Mrs. Isenberg believes that this case may be resolved through the Court's mediation program or through a settlement conference.

Defendant: MetLife is not opposed to participating in fruitful settlement negotiations as the case progresses and does not object to participating in a settlement conference, but is not interested, at this point, in participating in the Court's mediation program,

**6.     Any other information the parties believe may assist the Court in resolving the action**

None at this time.

The Parties thank Your Honor for your attention to this matter. We look forward to discussing the matter further with Your Honor at the Court's conference on September 25, 2015 at 11:00 a.m.

Respectfully submitted,

| HOGUET NEWMAN REGAL  & KENNEY, LLP | SEDGWICK LLP |
|---|---|
| By: /s/ Andrew N. Bourne  Andrew N. Bourne (AB-9774) | By: /s/ Michael H. Bernstein  Michael H. Bernstein (MB-0579)  Matthew P. Mazzola (MM-7427) |